**DOWTY COMMUNICATIONS INCORPORATED, Plaintiff,**

v.

**NOVATEL COMPUTER SYSTEMS CORPORATION, Defendant.**

Civ. No. HAR 91-3734.

United States District Court, D. Maryland.

Oct. 19, 1992.

Opinion Denying Reconsideration Nov. 9, 1992.

Thomas M. Goss, Goodell, DeVries, Leech and Gray, Baltimore, MD, Sandra E. Lundy, Testa, Hurwitz and Thibeault, Boston, MA, for plaintiff.

Morton Edelstein, Edelstein & Stahl, P.A., Baltimore, MD, William N. Rogers, Shaffer and Rogers, Rockville, MD, for defendant.

## MEMORANDUM OPINION

HARGROVE, District Judge.

This is a dispute between two sophisticated corporations involved in the business of selling high-tech communications equipment. Behind the attempt to characterize it as a business tort, the case fundamentally sounds in contract. Pursuant to a Master Distributorship Agreement ("MDA") dated July 1, 1991, the Plaintiff, Dowty Communications Incorporated ("Dowty"), a designer, manufacturer and seller of telecommunication equipment, agreed to supply "Series DPC9506 T–1 network access multiplexers" to the Defendant, Novatel Computer Systems Corporation ("Novatel").[1] After receiving the multiplexers from Dowty, Novatel intended to distribute some of the devices to "end-users" under the Novatel logo and name. (Novatel Opp., p. 6–7).

On December 31, 1991, Dowty initiated the above-captioned action claiming that between July and November 1991, Dowty had supplied Novatel with multiplexers and that despite Dowty's submission of invoices for sales, service and repair, Novatel had failed to tender payment. (Dowty Complaint ¶ 15). In an attempt to collect its receivables, Dow-

---

1. Multiplexers are telecommunication devices which convert digital communications data into an analog format. They are used to send local voice and data messages to and from telecommunications companies.

ty alleged four causes of action against Novatel: (1) Monies due on account; (2) Breach of contract; (3) Breach of implied covenant of good faith and fair dealing; and (4) Quantum meruit.

In its Answer, Novatel denied that it owed Dowty the sums alleged, and pursuant to Fed.R.Civ.P. 13(a), raised four counterclaims: (1) Fraud; (2) Intentional interference with prospective business advantage; (3) Breach of contract; and (4) Breach of the implied covenant of good faith and fair dealing. During the subsequent course of this litigation, Novatel abandoned its second and fourth counterclaim.[2]

Presently before the Court is Dowty's Motion for Partial Summary Judgment on Novatel's remaining counterclaims. Summary judgment will be granted when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the Court views the underlying facts and all reasonable inferences drawn therefrom in the light most favorable to Novatel, the party opposing summary judgment. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). With that in mind, the Court has reviewed the memoranda submitted by the parties; no hearing is deemed necessary. Local Rule 105(6). For the reasons stated more fully herein, the Court finds that Dowty is entitled to partial summary judgment.

### Novatel's Contract Counterclaim

In Count III of its counterclaim, Novatel alleges that Dowty violated the MDA

by failing to ship products to Novatel at the time they were promised; by shipping products which do [sic] not conform in their design to the products described by Dowty; by shipping products which were defective; by concealing the fact that it

knew the products did not conform to the designs described; and by continually promising to remedy the products' defects but failing to do so.

(Novatel counterclaim, ¶ 30). In its prayer for relief on the breach of contract claim, Novatel seeks two million dollars in damages, plus interest, costs, expenses and attorneys' fees.

Dowty counters that the explicit terms of the MDA limit both the claims for relief and the remedies available to Novatel. More specifically, Dowty argues that Novatel's breach of contract claims are limited by the "warranty disclaimers" in the contract. In addition, Dowty asserts that the "remedial limitations" of the agreement restrict Novatel's possible recovery to the repair or replacement of the products in question, or to a refund of the purchase price.

### 1. Warranty Disclaimers

■ Dowty warranted to Novatel that its products and repair work would be "free from defects in material and workmanship for a period of fifteen (15) months from the date of shipment in the case of Products, and ninety (90) days in the case of repair work." (MDA ¶ 10.2). The paragraph discussing warranty goes on to provide, in capital letters:

THE FOREGOING WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER TYPE, WHETHER EXPRESSED OR IMPLIED.

Dowty argues that this express contractual limitation on warranties restricts Novatel's breach of contract claims to representations made by Dowty within the four corners of the MDA. The Court agrees.

**2.** In its Memorandum in Support of Partial Summary Judgment, Dowty persuasively argues that Maryland does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing. The Court was a bit puzzled, in light of Dowty's presentation, that

Dowty had not abandoned the same cause of action raised in its Complaint. The Court notes, however, that Dowty has since abandoned its breach of the implied covenant of good faith and fair dealing claim, as well as its claim for quantum meruit.

The MDA is a written contract for the sale of telecommunications equipment between two sophisticated merchants. Paragraph 19 of the MDA, "Choice of Law," indicates that the contract is to be "governed by and interpreted, construed and enforced in accordance with the laws of the State of Maryland." As the agreement contemplates a "transaction in goods," the Maryland Uniform Commercial Code, ("UCC") applies. Maryland Commercial Law Article, § 2–101 et seq.

Section 2–316 of the UCC, "Exclusion or modification of warranties," permits sellers to exclude or modify both express and implied warranties. Express warranties can be negated or limited to those stated in the contract by express language to that effect. UCC § 2–316(1); Boatel Industries v. Hester, 77 Md.App. 284, 300, 550 A.2d 389 (1988). Implied warranties can also be disclaimed. UCC § 2–316(2) states that "to exclude or modify the implied warranty of merchantability ... the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be in writing and conspicuous." All other implied warranties "are excluded ... by language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." UCC § 2–316(3). Finally, Official Comment 3 to UCC § 2–719 specifically states that "the seller in all cases is free to disclaim warranties in the manner provided in Section 2–316."[3]

The clear, unambiguous and conspicuously typed language of MDA paragraph 10.2 complies with the criteria articulated in the UCC for excluding express and implied warranties. In fact, nowhere in its opposition does Novatel argue that the warranty disclaimers of the MDA are inoperative or non-binding.

Therefore, the Court finds that Novatel is limited in the pursuit of its breach of contract counterclaim to the representations and warranties expressed in the written agreement. Novatel cannot attempt to show that Dowty's failure to supply products that complied with representations made by Dowty during negotiations constituted a breach of the contract. Despite the warranty disclaimers, had Novatel's fraud counterclaim survived summary judgment, evidence concerning representations made during negotiations would have been appropriate. See discussion infra p. 590–92.

2. *Restrictions on Available Remedies*

■ Dowty argues that in addition to its warranty limitations, the MDA restricts any Novatel recovery to the costs for repair and replacement of defective parts or to a refund of the purchase price. Specifically, Dowty refers to paragraph 11 of the MDA which states:

[Novatel's] EXCLUSIVE REMEDY, and Dowty Communication's TOTAL LIABILITY, FOR ANY AND ALL LOSSES AND DAMAGES ARISING OUT OF ANY CAUSE WHATSOEVER (WHETHER SUCH CAUSE BE BASED IN CONTRACT, NEGLIGENCE, STRICT LIABILITY, OTHER TORT OR OTHERWISE) SHALL IN NO EVENT EXCEED THE PURCHASE PRICE OF THE PRODUCTS (OR REPAIR PRICE OF THE WORK) IN RESPECT TO WHICH SUCH CAUSE ARISES. IN NO EVENT SHALL Dowty Communications BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES RESULTING FROM ANY SUCH CAUSE INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS.

3. Unlike limitations on remedies, the UCC does not provide for the avoidance of warranty exclusions based on the specific circumstances surrounding an alleged breach. The UCC does instruct the Court to construe a contract which at the same time expresses and disclaims a specific warranty so that the negation or limitation is inoperable, UCC § 2–316(1), but that presumption is not applicable here. UCC § 2–316.1 states that "any language used by a seller of consumer goods which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose is unenforceable." Consumer goods are defined as goods "used or bought for use primarily for personal, family or household purposes." UCC § 9–109(1). Novatel has not argued, nor could it on this record, that the telecommunications products contemplated by the MDA were consumer goods. Thus, the restriction on disclaiming warranties expressed in § 2–316.1 is also inapposite.

Dowty asserts that paragraph 11 precludes Novatel from seeking damages for loss of business, damages for injury to reputation and goodwill, as well as punitive and exemplary damages.

The UCC contemplates that parties to a contract will agree to restrict their available remedies should the contract ultimately be broken. Section 2–719, "Contractual modification or limitation of remedy," states

> an agreement ... may limit or alter the measure of damages recoverable, as by limiting the buyer's remedies to the return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts ... [so long as] circumstances [do not] cause an exclusive remedy to fail of its essential purpose.

UCC § 2–719(1)(a) and (2). In addition, "consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." UCC § 2–719(3).

The contractual language of MDA paragraph 11 creates a two-tiered limitation on Dowty's potential liability. On the first level, Dowty's exposure is limited to the cost of repairing or replacing nonconforming multiplexers, or in the alternative, to the refunding of the purchase price. If that limitation were deemed to be not effective, the second level operates to preclude Novatel from recovering incidental, consequential, special and punitive damages, as well as lost profits. Under the UCC, these two levels of restrictions must be analyzed separately.

Novatel's ability to recover damages from Dowty in excess of the cost to repair or replace the defective multiplexers, or in excess of the purchase price, depends on its ability to persuade the Court that the MDA's restricted remedies, under the circumstances, "fail of their essential purpose." UCC § 2–719(2). Should Novatel succeed in undermining the limited "repair, replace or refund" remedy, its opportunity to collect consequential damages would depend on its persuading the Court that the MDA restriction on consequential damages is "unconscionable," or that Dowty's alleged breach was "total and fundamental," or that Dowty acted in "bad faith."

### A. The Limited Remedy Did Not Fail Of Its Essential Purpose.

Novatel's most substantial attempt to circumvent the MDA's remedial limitations springs from its claim that under the circumstances, the "repair, replace or refund" remedy "fails of its essential purpose." This approach urges the Court to refuse to enforce the restriction on contractual remedies because to do so would deprive Novatel of the "benefit of its bargain." The first Official Comment to UCC § 2–719 states:

> Under this section, parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect. However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Title they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.... Under subsection (2), where an apparently fair and reasonable clause because of the circumstances fails in its essential purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Title.

There are at least two ways of determining whether a particular set of facts deems a restricted contractual remedy to fail of its essential purpose. The first is to assess the potential breaches envisioned by the parties when they agreed to limit their remedies and then to compare the actual breach to the parties' initial expectations. If the expectations and reality are materially the same, the remedial limitation should be enforced. *See Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703 (9th Cir.1990) ("A limited repair remedy serves two main purposes. First, it serves to shield the seller from liability during her attempt to make the goods conform. Second, it ensures that the buyer will receive goods conforming to the contract specifications within a reasonable period of time." *Citing, Chatlos Systems v. National Cash Register Corp.*, 635 F.2d 1081, 1085 (3rd Cir.1980)). The second, more com-

mon approach is to evaluate the compliance of the party in breach with its limited remedial responsibilities. If the party violating the agreement fails to compensate the innocent party in the limited manner provided for by the contract, the remedy has failed of its essential purpose. Under either of these approaches, Novatel has not shown that it is entitled to the more expansive damages it seeks.

An excellent example of the first approach is demonstrated in *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102 (4th Cir. 1980). "A pragmatic approach in applying section 2–719(2) to a specific warranty involves an initial determination of the essential purposes intended by the seller and buyer in proposing and accepting the limited warranty." *Id.* at 1107, *citing* Eddy, "On the 'Essential' Purposes of Limited Remedies: The Metaphysics of UCC Section 2–719(2)," 65 Calif.L.Rev. 28, 30–40 (1977). Because neither party has submitted evidence nor addressed in argument their respective intentions in agreeing to paragraph 11, the Court attempts to "glean the essential purpose of the limited warranty from the transaction." *Coastal Modular, supra*, 635 F.2d at 1107.

Focusing on the context in which Dowty and Novatel consummated the MDA is helpful in the Court's attempt to infer what type of breach Dowty and Novatel anticipated when drafting paragraph 11. It is reasonable to infer that both parties understood that Dowty would supply a product that was to bear Novatel's logo and name, and that Novatel intended to distribute to its clientele. Moreover, both parties realized that the multiplexers supplied by Dowty, by their nature, were not the type of product which could be readily identified as "defective." Given these prior understandings, it is reasonable to attribute to the parties the following anticipations in the event that the multiplexers were defective: (1) defects would not become apparent until Novatel's customers had the multiplexers installed and had tried to operate them; (2) remedying multiplexer defects would require cooperation between Novatel and Dowty whereby Novatel informed Dowty of problems and either Dowty travelled to the location of Novatel's customers or Novatel's customers sent defective multiplexers back to Novatel or to Dowty; and (3) defects would cause Novatel's customers to become dissatisfied with Novatel as the multiplexers were to have Novatel's, and not Dowty's, logo and name on them. In limiting Dowty's liability to the costs of repairing or replacing the multiplexers, or to the purchase price of the multiplexers, the parties intended that Novatel would inform Dowty of defects, allow Dowty a reasonable time to make repairs or replacements, and implicitly, forego any consequential damages for loss of business, reputation or good will while such repairs were being made.

The facts involved in *Coastal Modular* are closely analogous to the facts presented here. There, a manufacturer of panels for air traffic control towers agreed to supply such panels to the general contractor, (Coastal), which in turn was to assemble the towers for the United States Navy. When the Navy informed Coastal that the panels were defective and that they needed to be removed and replaced, and after the manufacturer refused to replace the panels, Coastal sued seeking damages for the costs of investigating the cause of the defects, removing the Navy installed electrical elements from within the panels and replacing the panels. In defending against the suit, the manufacturer raised a contractual limitation on remedy which provided that the manufacturer would only refinish or repair panels, or pay for the cost of replacing each defective panel.[4]

In rejecting the manufacturer's contractual defense, the Fourth Circuit found that "Coastal and [the manufacturer] each intended to receive something from their bargain. The limited warranty allowed [the manufacturer] to limit prospective damages. Coastal expected that defective panels would be replaced by virtue of the contract's terms, thus avoiding the inconveniences of delay during

---

4. The Fourth Circuit specifically noted that in *Coastal Modular,* in contrast to this case, the warranty contained no specific exclusion of consequential damages nor a disclaimer of implied warranties. *See infra* note 6.

construction." *Coastal Modular, id.* The Court went on to state that

> supplying new panels after latently defective panels were installed would only return Coastal a portion of its expense, [as Coastal] would be obliged to assume the extra expenses of removing the defective panels and installing the new ones.... It is difficult to believe that a buyer in an equal bargaining position would accede to accepting such liability for a defect caused by the seller.

*Coastal Modular, id.* Thus, after concluding that the function of the limited remedy was to provide replacement panels in time for their inclusion in the towers, the Court of Appeals compared that purpose to the facts surrounding the breach. Because the defective nature of the panels became evident only after Coastal had built them into the Naval towers, the limited remedy could not satisfy the purpose for which it was originally intended.

In contrast to the facts in *Coastal Modular,* the alleged breach by Dowty is exactly the type of breach, and has generated exactly the type of damages, that the parties reasonably anticipated when negotiating and signing the MDA. Consequently, under the first approach to determining whether a restricted remedy fails of its essential purpose, the Court concludes that the MDA limitations are effective and binding.

The more common approach adopted by Courts in their analysis of a restricted remedy's ability to fulfill its "essential purpose" is the examination of the violating party's compliance with the already limited contractual remedy. For example, in *RRX Industries, Inc. v. Lab–Con, Inc.,* 772 F.2d 543 (9th Cir.1985), the buyer of a computer software system brought a breach of contract action against the seller based on defects in the system. In determining that the "repair or replace" remedy failed of its essential purpose, the Ninth Circuit held "since the defen-

dant was either unwilling or unable to provide a system that worked as represented, or to fix the 'bugs' in the software, these limited remedies failed of their essential purpose." *RRX Industries, Inc., id* at 547. *See also, Consolidated Data Terminals v. Applied Digital Data Systems,* 708 F.2d 385, 392 (9th Cir.1983) (In action brought by distributor of computer terminals against manufacturer, "where warranted goods fail to perform according to specifications as warranted despite the seller's efforts to repair, a limited 'repair' remedy fails of its essential purpose."); *Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703, 707 (9th Cir.1990) ("A contractual provision limiting the remedy to repair or replacement of defective parts fails of its essential purpose within the meaning of 2–719(2) if the breaching manufacturer or seller is unable to make the repairs within a reasonable time period."); *Chatlos Systems v. National Cash Register Corp.,* 635 F.2d 1081, 1085 (3rd Cir. 1980) (In action of buyer of a computer system against the seller for breach of express and implied warranty, "the limited, exclusive remedy fails of its purpose and is thus avoided under 2–719(2) whenever the warrantor fails to correct the defect within a reasonable period. Because NCR never furnished four of the six promised functions, their attempted limitation of remedy failed of its essential purpose. CSI was therefore deprived of the substantial value of its bargain.").

Novatel has argued that it "gave Dowty every opportunity to 'repair or replace' its defective products with ones that worked. Dowty simply would not remedy the situation even though it had the ability." (Opp. Mem. p. 15). However, Novatel has not supported its assertion with facts. Consequently, there is no evidence in the record which suggests that Dowty refused to repair defective multiplexers. Ironically, the only evidence in the record relating to the repair of defective multiplexers was submitted by Dowty.[5]

---

5. Bradley Collingwood, the Executive Vice President of Novatel and head of its technical operations testified in a deposition that although Dowty made a specific request to Novatel to return certain units which Novatel claimed to be defective, Collingwood, on direct orders from Nova-

tel's president, refused to allow such repairs to be made.

Q. Do you know whether those five units were ever sent back to Dowty?

A. I know they were not.

This Court cannot, in the absence of factual support, conclude that Dowty refused or failed to comply with its promise to repair or replace the defective multiplexers simply because Novatel argues in its memorandum that that is what occurred. The primary function of the summary judgment procedure is "to determine whether there is an issue of fact to be tried, and if there is none, to cause judgment to be rendered accordingly." *Porter v. General Boiler Casing, Co.,* 284 Md. 402, 413, 396 A.2d 1090 (1979). Summary judgment is appropriate to dispose of factually unsupported claims. *Felty v. Graves–Humphrey Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). Pursuant to Fed.R.Civ.P. 56(c), summary judgment is proper,

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Anderson, supra* 477 U.S. at 247, 106 S.Ct. at 2510. As explained by the Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. at 2552. Rule 56(e) addresses in clear and unambiguous terms, the precise nature of the evidentiary burden borne by a party opposing summary judgment:

> An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

It is well established, at least in the Fourth Circuit, that a party wishing to oppose summary judgment must present evidence tending to raise a material and genuine factual dispute. Novatel's failure to present evidence that Dowty refused to honor its "repair, replace or refund" remedy, mandates, under the second approach, that summary judgment be entered against it. *See Bradford v. School District No. 20, Charleston, South Carolina,* 364 F.2d 185 (4th Cir.1966); *Foy v. Norfolk and Western Railway Co.,* 377 F.2d 243 (4th Cir.1967); *Morrisey v. William Morrow & Co., Inc.,* 739 F.2d 962 (4th Cir.1984); *Sturdivant v. Medical Engineering Corporation,* 121 F.R.D. 51 (D.Md. 1988).

Although the Court, having determined that the limited "replace, repair or refund" remedy prescribed by the MDA has not failed of its essential purpose, need not reach Novatel's arguments concerning the availability of consequential damages, for the sake of completeness, the Court briefly addresses Novatel's remaining arguments. The Court notes again that the distinction between types of contractual limitations on remedies must be maintained. As stated above, Dowty's liability was limited in two separate respects: first, by the "repair, replace or refund" remedy and second, by a restriction on consequential damages. Courts have recognized the distinction, and have upheld a limitation on consequential damages even after determining that the "repair, replace or refund" remedy failed of its essential purpose. For example, in *S.M. Wilson & Co. v. Smith*

Q. Did you have any discussions with anybody concerning sending those multiplexers back to Dowty?
A. I believe I had a discussion with Mr. Pearlson, yes.
Q. Could you tell me about that discussion, please?
A. The discussion was don't send the units back.
Q. Why did he tell you not to send the units back?
A. Because we had to install them at customer sites.
Q. Even though you knew they had problems?
A. I knew that certain units had problems, yes. They were not all—
Q. But Mr. Pearlson wanted to put them int the field; is that correct?
A. We had to, yes.
(Collingwood Depo. at 206–209, Exhibit 2 to Goss Supp. Aff.).

*Int'l Inc.*, 587 F.2d 1363, 1375 (9th Cir.1978), the Ninth Circuit held that "the failure of a repair remedy does not require permitting the recovery of consequential damages." The Court of Appeals reasoned that where parties agree to a limitation of damages provision, courts should not alter the bargained-for risk allocation unless a breach of contract is so fundamental that it causes a loss which is not part of that allocation.[6]

### B. The Restricted Remedies Are Not Unconscionable.

■ The transaction between Novatel and Dowty was commercial in nature, involving sophisticated business entities. As such, the terms of the MDA are presumptively valid. *Flow Industries, Inc. v. Fields Const. Co.*, 683 F.Supp. 527, 531 (D.Md.1988). Both parties, dealing at arm's length, consented to the terms of paragraph 11. It was a "commercially sensible arrangement" for Dowty to limit its exposure and to protect itself from the potentially huge consequential damages that Novatel may incur, (or at least claim that it incurred), from distributing the Dowty supplied multiplexers under its own logo and name. "The agreement is not one 'such that no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.'" *Schrier v. Beltway Alarm Company*, 73 Md. App. 281, 294, 533 A.2d 1316 (1987), *citing Earl of Chesterfield v. Janssen*, 28 Eng.Rpr. 82 (1750).

In dismissing Novatel's "unconscionability" assertion, the Court need not rely solely on its inferences of the reasonable motivations and expectations of Novatel and Dowty. In his deposition, Daniel Pearlson, President of Novatel, testified that he "thought that the agreement was pretty well clear," and that he felt he understood it. (Pearlson Depo. p. 136). Moreover, Novatel itself incorporated

provisions limiting available remedies in its agreements with its own customers. In a letter dated January 11, 1991, Pearlson wrote to one of Novatel's customers that he felt "that it [was] reasonable for [the customer] to accept that [Novatel's] liability should not exceed the cost of equipment that [Novatel had] agreed to maintain." (Exh. 5 to Goss Affidavit). Given that the President of Novatel understood the restrictions on available remedies and attested to such limitations' reasonableness, this Court is not prepared to find the MDA restrictions on consequential damages "unconscionable."

### C. The Record Does Not Indicate that the Alleged Breach Was "Total Or Fundamental."

Another approach some courts have taken in approaching the effectiveness of a contractual limitation on consequential damages is to focus on the magnitude of the breach so as to assess whether the limited remedy should be enforced. In *S.M. Wilson & Co. v. Smith International, Inc.*, *supra*, the Ninth Circuit found that the seller of a tunnel boring machine (which did not perform as efficiently as promised) was not liable for consequential damages because the default was "not so total and fundamental as to require that its consequential damage limitation be expunged from the contract." *S.M. Wilson & Co.*, *id* at 1375. In contrast, *RRX Industries, Inc. v. Lab–Con, Inc.*, *supra*, held that the seller of a computer software system violated its contract by failing to install an operational system, repair software malfunctions or train the buyer's employees. Because the Ninth Circuit deemed this breach "total and fundamental," and because it found that the circumstances rendered the damages limitation "oppressive and invalid," the court relieved the buyer from the contract's remedial limitations.[7]

6. *See also, Coastal Modular, supra* at 1107.

"Coastal and Laminators could have specifically agreed to limit consequential damages, but they did not. Had Laminators' warranty specifically limited consequential damages, Coastal could have only received its costs of the material even though that represented partial failure of the essential purpose of the warranty. It seems unlikely that a buyer would agree to

such a limitation in the circumstances of this case, but a conscious acceptance of such an agreement would bind him even in the face of a partial failure of the essential purpose of the remedy unless the limitations were unconscionable."

7. The facts alleged by Novatel, were they to be supported with admissible evidence, are more closely analogous to those involved in *S.M. Wil-*

There is no evidence in the record which supports Novatel's allegation that Dowty's breach was "total and fundamental." To be sure, Novatel argues that Dowty's breach was " 'total and fundamental.' The product didn't work." (Opp. Mem. p. 11). Similarly, Novatel claims that

> [it] did not receive what it had bargained for. [It] was told by Dowty that the 9500 series multiplexers were the functional equivalent of the 9400 series.... Such was not the case. The 9500 series multiplexers, even on the rare occasions when they were operable, could never perform the functions of the 9400 series.

(Opp. Mem. p. 14). But Novatel has failed to submit admissible evidence tending to support its assertions. While commendably attempting not to "overburden" its opposition with "appendages," as discussed above, Novatel was required by the clear mandates of Fed.R.Civ.P. 56(e) to support its allegations with factual evidence. Its attachment of "DCP 9500 Systems Failure Analysis" without any authentication, explanation of when or how it was compiled, or description of its significance does not satisfy the evidentiary requirements of Rule 56.

### D. *Novatel Has Not Demonstrated Dowty's Bad Faith*

*American Electric Power Co. v. Westinghouse Electric Corp.*, 418 F.Supp. 435 (S.D.N.Y.1976) and *Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F.Supp. 1442 (S.D.N.Y.1986) hold that a defendant may not rely upon the provisions of a contract, including one disclaiming liability for consequential damages, where the defendant acted fraudulently or in bad faith. Novatel argues that "by making Novatel an unwilling and unwitting Beta test site, Dowty was guilty of the most egregious bad faith. This in and of itself should preclude Dowty from asserting any limitation of damage provisions."[8] (Opp. Mem. p. 15). In support of this claim, Novatel references, without attaching, the deposition testimony of a Henry Houck, and of Steve Feldstein, Vice President of Dowty in charge of sales. Without being able to read the transcript, this Court is not prepared to hold that Dowty acted in bad faith simply because Novatel asserts that Dowty intended on using Novatel as a beta test site.[9]

### *Novatel's Fraud Counterclaim*

In paragraph 9 through 19 of its counterclaim, Novatel alleges that Dowty fraudulently induced it to purchase a DCP9506 multiplexer product by representing that the product had all the same functions and features as the more expensive multiplexer that Dowty had initially marketed to Novatel (a DCP9400 system). Moreover, Novatel asserts that Dowty represented that the DCP9506 and the DCP9400 used compatible components and hardware. According to Novatel's claims, Dowty represented that the product was functional and that Dowty was beginning beta testing. Novatel asserts that Dowty knew its representations were false, and that it continued to make such false representations so as to secure Novatel's order. Finally, Novatel alleges that it would not have entered the distribution agreement had Dowty been honest about the functional capacity of the DCP9506 multiplexer.

While in light of the MDA's limitation on warranties it is understandable why Novatel

---

son & Co. than those in *RRX Industries, Inc.* In *S.M. Wilson & Co.*, the plaintiff was able to dig its tunnel, albeit not as quickly as the defendant had promised. On the other hand, in *RRX Industries, Inc.*, the plaintiff received nothing—no operating system, no repairs and no employee training. Here, Novatel received multiplexers, some of which did not operate all the time. The fact that they operated some of the time prevents Dowty's breach from being "total and fundamental."

**8.** Beta testing refers to product testing at a customer location, attempting tasks the product was designed to perform. Alpha testing, by contrast, is done by a manufacturer, in its laboratory, using test equipment.

**9.** In the first place, even under the assumption that Dowty so intended, the multiplexers would already have been alpha tested in the lab. Novatel has provided no support for the assertion that a manufacturer acts in bad faith when it uses a customer as a beta test site. Nor has Novatel factually supported its assertion that it did not know the product had not been beta tested before it was shipped by Dowty.

filed its counterclaim alleging the tort of fraud, the Court notes at the outset that

> a good argument can be made for keeping intact the line between contract and fraud for misrepresentations about product quality, at least in commercial transactions involving sophisticated merchants.... Where representations relating to product quality are involved, as between sophisticated buyers and sellers, the law of contract, which, unlike the law of tort, eschews ideas of moral blameworthiness and punitive recoveries, ought to furnish the exclusive remedy.

*Blue Circle Atlantic, Inc. v. Falcon Materials, Inc.,* 760 F.Supp. 516, 519 (D.Md.1991). "Where the controversy concerns purely economic losses allegedly caused by statements made during the course of a contractual relationship between businessmen, it is plainly contract law which should provide the rules and principles by which the case is to be governed." *Flow Industries, Inc. v. Fields Construction Co.,* 683 F.Supp. 527, 530 (D.Md.1988) *citing Wood Products, Inc. v. CMI Corp.,* 651 F.Supp. 641, 648 (D.Md. 1986).

In Maryland, fraud must be proven by clear and convincing evidence. *Everett v. Baltimore Gas & Electric Co.,* 307 Md. 286, 513 A.2d 882 (1986). To prove fraud, a Novatel must demonstrate (1) that Dowty made a false representation; (2) that Dowty knew the representation was false or made it with such reckless indifference as to its truth or falsity that knowledge may be imputed to it; (3) that Dowty's representation was made for the purpose of defrauding Novatel; (4) that Novatel relied on the misrepresentation, had the right to rely upon it with full belief in its truth, and would not have done the act resulting in damage if Dowty had not made the representation; and (5) that Novatel suffered damage as a direct result of the misrepresentation. *Aeropesca Ltd. v. Butler Aviation*

*Int'l., Inc.,* 44 Md.App. 610, 619–620, 411 A.2d 1055 (1980).

While Novatel's counterclaim states the five constituent elements of a fraud claim, Novatel has failed to submit, in accordance with Fed.R.Civ.P. 56, factual support for each element. "There can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett, supra,* 477 U.S. at 322–323, 106 S.Ct. at 2552.

Aside from Novatel's failure to attach affidavits or deposition testimony to its opposition memorandum, the few allegations it makes within the body of its argument, even were the Court to excuse the fact that the evidence referred to was not attached to the memorandum, do not satisfy each element of fraud.[10] For instance, Novatel has neither produced nor alluded to any factual support for its allegations concerning the representations supposedly made by Dowty. While it would not have been difficult for Novatel to attach an affidavit or deposition of its President outlining his version of the contractual negotiations, this Court, in the absence of such a minimal showing, will not attempt to infer what representations, if any, were actually made. The Court has read the many cases cited by Novatel which state that summary judgment is seldom appropriate when particular states of mind are decisive elements of the claim. But Novatel cannot avoid summary judgment simply by pleading fraud, and especially in a case like the one at bar, where there is an absence of factual support on a nonsubjective or state of mind element, summary judgment is appropriate. *Bradford, supra.*

### Conclusion

The Court notes its discomfort in closing the door on many of Novatel's claims for recovery based on its inability to comply with

---

10. On page 16 of its opposition, Novatel asserts "Novatel was clearly damaged (ruined) by its rightful reliance on Dowty's representations and there has been no suggestion that Novatel's reliance was unreasonable. Dowty not only had reason to believe that Novatel was relying on its representations but actively promoted its product to Novatel. There is clear evidence that Dowty knew or should have known that the 9500 series product was not ready for deployment. The specific misrepresentations were that the product was the functional equivalent of the 9400 series and that it had been fully Beta tested and certified."

the procedural requirements of Rule 56. Novatel claims on page 3 of its opposition memorandum that the record in this case "consists of over 100,000 documents and 17 depositions in 27 volumes of testimony." The Court is left to wonder why, with that magnitude of material available, Novatel failed to present enough evidence to demonstrate at least a factual dispute over the key elements of its claims. One hypothesis may be that such evidence simply doesn't exist. Whatever the reason may be, the mandatory language of Rule 56(e) dictates that the Court grant Dowty's motion.

For the foregoing reasons, Dowty is entitled to partial summary judgment with respect to Novatel's counterclaims. The breach of contract counterclaim is appropriately limited to the warranties and promises made within the four corners of the MDA; if Novatel prevails on its contract counterclaim, its damages will be limited to the cost of repairing or replacing the multiplexers, or to a refund of the purchase price. Moreover, Novatel's fraud claim is not supported by sufficient evidence to create a factual dispute, and therefore, it will be appropriately dismissed.

It will be so ordered.

## ON RECONSIDERATION

In response to the Court's October 16, 1992 decision restricting its breach of contract counterclaim and dismissing its fraudulent misrepresentation counterclaim, Novatel urges the Court to reconsider its Order granting partial summary judgment, or in the alternative, to permit Novatel to supplement the record. The crux of its claim that the Court should reconsider its holding rests with Novatel's argument that the Court misapplied the appropriate burdens of production when it first evaluated Dowty's Motion for Partial Summary Judgment. Novatel asserts, for the first time in its Motion to Reconsider, that it had no obligation to submit admissible factual evidence in support of its counterclaims and in opposition to Dow-

ty's motion because Dowty had not properly supported its motion with evidence. Novatel's syllogism concludes that because Dowty never shifted the burden of production to Novatel, Novatel's failure to comply with the procedural requirements of Rule 56(e) cannot provide a justification for summary judgment against it.

The Court notes at the outset that Novatel raised no challenge to the sufficiency of Dowty's Motion for Partial Summary Judgment in its initial Opposition. Instead, after discussing the standards for summary judgment, the reluctance of some courts to grant summary judgment in cases wherein particular states of mind are decisive as elements of a claim, and its unverified version of the factual background, Novatel dedicated seven pages of its Memorandum in Opposition to a discussion of how caselaw has applied the UCC to contractual provisions limiting claims for relief and available remedies. Novatel then devoted the remainder of its Opposition to a discussion of the elements of fraud, making the conclusory assertion that Dowty's conduct and Novatel's reliance thereon, satisfied said elements. It is clear to the Court that Novatel understood the legal arguments put forth by Dowty in its Motion for Partial Summary Judgment and attempted to confront those arguments directly. Most assuredly, Novatel did not assert in its Opposition that Dowty's positions with respect to the contractual limitations on remedies and the absence of evidence supporting the counterclaim of fraudulent misrepresentation were undeserving of response because they themselves were unsupported factually.[1]

Even were the Court to overlook Novatel's failure to timely raise its objections to the alleged absence of factual support for Dowty's Motion for Partial Summary Judgment, it is difficult to fathom what additional factual support Novatel would have had Dowty present to support its argument that the clear, unambiguous terms of the MDA restricted both claims and remedies for breach of contract. Dowty, in addition to offering

---

1. Novatel argues on page 12 of its instant motion that "Dowty's submission is so insufficient that Novatel could—and considering what happened, probably should—have ignored it entirely. Novatel's counsel, however, chose to respond, mainly because the Limitation of Damages issue appeared to be one that might be susceptible to being decided as a matter of law."

the contract itself, presented testimony that Novatel used similar language in its own contracts to restrict warranties and limit remedies; it presented deposition testimony that Novatel's President and CEO understood the contract's terms; and it presented deposition testimony that Novatel refused to return defective multiplexers so as to allow Dowty the opportunity to repair or replace them. This evidence was sufficient, in light of Novatel's complete failure to present evidence to the contrary, to support partial summary judgment for Dowty on Novatel's breach of warranty counterclaim.

With respect to Dowty's Motion for Partial Summary Judgment on Novatel's fraudulent misrepresentation counterclaim, Novatel's argument for reconsideration is only marginally more persuasive. The legal problem Novatel alludes to in Dowty's presentation of its Motion for Partial Summary Judgment, although it does not so identify, is the precise dilemma that the Supreme Court wrestled with in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), namely the procedural mechanics of Rule 56 and the respective production burdens for moving and nonmoving parties. While the *Celotex* majority opinion is often cited for its articulation of the appropriate burden of persuasion during summary judgment,[2] a secondary debate over how the respective parties approach the burden of production manifests itself in the majority opinion, Justice White's concurring opinion, and Justice Brennan's dissenting opinion.

On page 19 of its Memorandum in Support of Partial Summary Judgment, Dowty simply asserted that "Novatel can offer no evidence that before entering into the Agreement, Dowty made representations it knew to be false at the time such alleged representations were made. Also, Novatel cannot show that any reliance upon such alleged representations by Dowty caused damage to Novatel."

Similarly, Dowty claimed on page 21 of its Memorandum that:

> Novatel cannot offer specific evidence on which a fact finder could reasonably conclude that Dowty made representations about the quality or characteristics of its products which it knew to be false at the time such representations were made.... Indeed, Novatel deposed no less than thirteen Dowty employees and Dowty produced thousands of pages of documents, yet not one piece of Dowty deposition testimony nor one single Dowty document supports Novatel's fraud claim.

Like Dowty's Motion for Partial Summary Judgment on Novatel's fraud counterclaim, the defendant in *Celotex*, an asbestos exposure wrongful death case, argued in its motion for summary judgment that the plaintiff had no evidence tending to show the decedent's exposure to the particular defendant's products. In discussing how a moving party should approach summary judgment on the ground that the nonmoving party lacks the evidence to prove its case, the majority noted that:

> a party seeking summary judgment always bears the initial responsibility of *informing* the district court of the basis for its motion, and *identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.*

*Celotex, supra* 477 U.S. at 323, 106 S.Ct. at 2553. (emphasis added). The majority went on to say:

> We do not think *Adickes [v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)] ... should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmov-

---

**2.** "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

ing party bears the burden of proof. Instead, as we have explained, *the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.*

*Celotex, id.* at 325, 106 S.Ct. at 2554. (emphasis added).

Novatel's instant Motion to Reconsider presents the question whether Dowty adequately and properly informed the Court that it believed there was an absence of evidence to support Novatel's fraudulent misrepresentation counterclaim. To answer this question, the Court must identify the mechanics Rule 56 envisioned would permit a party moving for summary judgment to demonstrate a lack of evidence for its adversary's position. Justice Brennan recognized that *Celotex*'s discussion of how a moving party approaches "showing" the district court that there is an absence of evidence created an ambiguity:

> The Court has not clearly explained what is required of a moving party seeking summary judgment on the ground that the nonmoving party cannot prove its case. This lack of clarity is unfortunate: district courts must routinely decide summary judgment motions, and the Court's opinion will very likely create confusion.

*Celotex, id.* at 329, 107 S.Ct. at 2556, (Brennan, J., dissenting). Justice Brennan, it appears, foresaw the precise quandary that Novatel's Motion presents to the Court. Attempting to cast light on the Supreme Court's interpretation of the mechanics of Rule 56, Justice White stated that "the movant must discharge the burden the Rules place upon him: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Celotex, id.* at 328, 107 S.Ct. at 2555, (White, J., concurring). Justice Brennan added:

> The moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.... Where the moving party adopts this option

and seeks summary judgment on the ground that the nonmoving party—who will bear the burden of persuasion at trial—has no evidence, the mechanics discharging Rule 56's burden of production are somewhat trickier. Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a "burden" of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.

*Celotex, id.* at 331–32, 107 S.Ct. at 2557, (Brennan, J., dissenting).

At this junction, this Court's task would appear to be clear: it need only determine whether Dowty's support for its Motion for Partial Summary Judgment was a "conclusory assertion" that Novatel had no evidence to support its fraudulent misrepresentation counterclaim, or whether Dowty "affirmatively showed the absence of evidence in the record." However, this apparent lucidity is clouded as Justice Brennan's dissenting opinion continues:

> If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the court need not consider whether the moving party has met its ultimate burden of persuasion. Accordingly, the nonmoving party may defeat a motion for summary judgment that asserts that the nonmoving party has no evidence by calling the court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party. In that event, the moving party must respond by making an attempt to demonstrate the inadequacy of this evidence, for it is only by attacking all the record evidence allegedly supporting the nonmoving party that a party seeking summary judgment satisfies Rule 56's burden of production.

*Celotex, id.* at 332, 107 S.Ct. at 2557, (Brennan, J., dissenting).

This passage suggests that Justice Brennan anticipated that the nonmoving party

would respond to a blanket assertion that it had no evidence to support its claims by demonstrating to the trial court that the record contained evidence rendering the moving party's assertion incorrect. If Novatel were obligated by *Celotex* to respond to Dowty's conclusory assertion by demonstrating its patent falsity, the Court's task, rather than focusing on Dowty's submissions, would be to concentrate on Novatel's response.

■ Assuming first that *Celotex* requires absolutely no response to a motion for summary judgment supported only with conclusory assertions, the Court finds that Dowty's initial Motion for Partial Summary Judgment, while arguably not "identif[ying] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file" which it believed demonstrated an absence of evidence of fraud, it did " 'show'— that is, point[ ] out to the court—that there [was] an absence of evidence to support [Novatel's] case." As noted above, Dowty did refer in its Memorandum to the record established during discovery, stating "Novatel deposed no less than thirteen Dowty employees and Dowty produced thousands of pages of documents, yet not one piece of Dowty deposition testimony nor one single Dowty document supports Novatel's fraud claim." This sufficiently informed the Court, and put Novatel on notice, that Dowty believed the record was devoid of any direct or circumstantial evidence in support of Novatel's fraudulent misrepresentation counterclaim.

■ "The summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.' " *Celotex, id.* at 327, 107 S.Ct. at 2555, (citing Fed.Rule Civ.Proc. 1; and Schwarzer, "Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact," 99 F.R.D. 465, 467 (1984)). In this light, the Court notes the inherent difficulty in demonstrating an absence of evidence, and is confident that the most efficient and least expensive method of litigating summary judgment motions predicated on an absence of evidence is to have the nonmoving party that shoulders the ultimate burden of persuasion at trial identify to the Court and to its adversary those portions of the record that support its claims.

In the instant case, Dowty made it eminently clear that it based its summary judgment motion on the premise that despite the conclusion of discovery, no evidence had been produced or uncovered which would support Novatel's fraud claim. Novatel made no effort to call the court's attention to evidence in the record that Dowty overlooked. Instead, it chose to oppose Dowty's motion with conclusory assertions about the available evidence. Thus, under the second interpretation of the summary judgment mechanics anticipated by *Celotex,* Novatel's claim that Dowty did not sustain its production burden is without merit.

■ Novatel has submitted with its Motion to Reconsider the "Affidavit of Daniel D. Pearlson, President and Chief Executive Officer of Novatel Computer Systems Corporation." [3] Having determined that Dowty's initial Motion for Partial Summary Judgment was sufficient to shift the burden of production to Novatel, the Court is not persuaded that Novatel has offered a legitimate justification for this Court's consideration of supplemental evidence. Novatel had a duty to bring forward any evidence available to it before the Court entered its summary judgment decision, not afterwards. *RGI, Inc. v. Unified Industries, Inc.,* 963 F.2d 658, 662 (4th Cir.1992); *Carteret Sav. Bank, P.A. v. Compton, Luther & Sons,* 899 F.2d 340, 344 (4th Cir.1990). Rule 56(e) permits the trial court, in its discretion, to receive supplemental material in support of or in opposition to a motion for summary judgment *before* ruling on the motion. "The underlying purpose of that rule would be undercut if the rule were construed to require the Court to accept further affidavits after it had already ruled on the motion for summary judgment." *RGI, Inc., supra* at 662. "Evidence that is available to a party prior to entry of judgment is not a basis for granting a motion for

---

**3.** Despite the submission of this affidavit and the 31 exhibits appended thereto, in its Memorandum, Novatel does not direct the Court to specific factual evidence tending to create a genuine dispute over a material fact.

reconsideration as a matter of law." *Boryan v. U.S.*, 884 F.2d 767, 771 (4th Cir.1989).

Novatel's counsel argues that "Novatel aught [sic] not be prejudiced by the advice of its attorney that [supporting its Opposition with factual evidence] was not necessary." While the Court is not unsympathetic to Novatel's plight, the dockets of federal courts would come screeching to a halt if every procedural error or tactical misjudgment of lawyers would entitle their clients to a "second bite at the apple." See, *Universal Film Exchanges, Inc. v. Lust*, 479 F.2d 573, 576–77 (4th Cir.1973) (binding client to the consequences of the acts or omissions of his freely selected attorney); *Blinder, Robinson & Co. v. United States SEC*, 748 F.2d 1415, 1421 (10th Cir.1984) ("[K]eeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of the plaintiff's attorney upon the defendant."). Therefore, the Court will not permit Novatel to supplement the record.

For the foregoing reasons, Novatel's Motion to Reconsider, or in the alternative, to Permit the Record to Be Supplemented, is denied. It will be appropriately so ordered.