**Toni HERBERT, Personal Representative of the Estate of Dawon Herbert, Deceased, Appellant,**

**v.**

**DISTRICT OF COLUMBIA, Appellee.**

**No. 99–CV–812.**

District of Columbia Court of Appeals.

Argued Jan. 10, 2001.

Decided Oct. 17, 2002.

Gregory A. Cotter for appellant.

Sheila Kaplan, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and REID, Associate Judges.

WAGNER, Chief Judge:

Appellant, Toni Herbert, personal representative of the estate of Dawon Herbert, deceased, appeals from a judgment in an

action brought under the District of Columbia's Wrongful Death Act to challenge the trial court's ruling that the law of the District of Columbia governs the award of damages. Appellant argues that Maryland law should control the issue of damages in the case of a Maryland resident fortuitously shot and killed by an off-duty Metropolitan police officer in the District. We conclude that a wrongful death claim arising from a death in the District of Columbia, under the circumstances of this case, is governed by the law of the District of Columbia. Therefore, we affirm.

## I.

### *Factual and Procedural Background*

On August 27, 1994, Dawon Herbert was fatally shot in the District of Columbia by an off-duty District of Columbia police officer who was responding to a disturbance involving the vehicle in which the decedent was riding. Prior to his death, the decedent was a resident of Maryland, where he resided with his mother and attended school. The day he was shot, decedent had come into the District to attend a festival. The decedent's mother, Toni Herbert, filed a complaint under the District of Columbia's Wrongful Death Act, D.C.Code § 16–2701 (1998) and Survival Act, D.C.Code § 12–101 (1998). The parties dismissed the action under the Survival Act by stipulation. During discovery, appellant represented that she was not making a claim for economic damages for lost support or services and that the only remaining pecuniary losses allowable under District law would be the cost of funeral and burial expenses. *See* D.C.Code § 16–2701.[1] However, appellant maintained that she was entitled to damages for the loss of her son's society under Maryland's wrongful death law. *See* Md.Code Ann., Cts. & Jud. Proc. § 3–904 (1998). Prior to trial, the trial court denied appellant's request to apply Maryland law on damages and ruled that District of Columbia law applied to the damages phase of the action under the District of Columbia Wrongful Death Act. *See* D.C.Code § 16–2701.

At trial, liability was contested, but the parties stipulated that under District of Columbia law, the only damages recoverable would be the amount of funeral and burial expenses, since appellant elected to forego other allowable pecuniary losses under the Wrongful Death Act.[2] The jury found the District liable for the decedent's death, and judgment was entered in the amount of $1,511.00 for funeral and burial expenses, as stipulated by the parties. Appellant appealed, challenging only the application of District of Columbia law to the damages award. Appellant does not challenge the application of District of Columbia law to the liability determination.

## II.

Appellant argues that, under the governmental interests analysis, Maryland

1. D.C.Code § 16–2701 provides that damages for wrongful death "shall include the reasonable expenses of last illness and burial."

2. The District of Columbia's Wrongful Death Act is " 'designed to provide a remedy whereby close relatives of the deceased who might have expected maintenance or assistance from the deceased had he lived, may recover compensation from the wrongdoer commensurate with the loss sustained.' " *District of Columbia v. Hawkins*, 782 A.2d 293, 303 (D.C. 2001) (quoting *Semler v. Psychiatric Inst. of Washington, D.C.*, 188 U.S.App. D.C. 41, 43–44, 575 F.2d 922, 924–25 (1978)). Recoverable damages under this Act include: (1) pecuniary losses resulting from the loss of financial support the decedent could have been expected to provide the next of kin had he lived; and (2) the value of lost services (e.g., care, education, training, and personal advice). *Id.* (citing *Doe v. Binker*, 492 A.2d 857, 863 (D.C.1985)). Appellant chose not to seek such damages under the District's statute.

law should control the issue of damages because the decedent was a Maryland resident, and the fortuity of his presence in the District at the time of his death has minimal significance. She contends that under the circumstances, the District has no interest in applying its compensation scheme over Maryland law and that an analysis of the relevant factors favors application of Maryland law on damages.[3] The District argues that the governmental interests analysis favors application of District of Columbia law. Further, it contends that recoverable damages are an integral part of the Wrongful Death Act and therefore, liability and damages should be determined under the same law.

This Court reviews choice of law questions *de novo*. *Atkins v. Industrial Telecomms. Ass'n,* 660 A.2d 885, 888 (D.C. 1995); *Vaughan v. Nationwide Mut. Ins. Co.,* 702 A.2d 198, 200 (D.C.1997) (citing *Hercules & Co. v. Shama Rest. Corp.,* 566 A.2d 31, 40 (D.C.1989)). Under a choice of law analysis, this Court applies another state's law when (1) its interest in the litigation is substantial, and (2) "application of District of Columbia law would frustrate the clearly articulated public policy of that state." *Kaiser–Georgetown Cmty. v. Stutsman,* 491 A.2d 502, 509 (D.C.1985). In tort cases, we use a "governmental interests" analysis to determine whether to apply District of Columbia law. *Id.* (*citing Williams v. Williams,* 390 A.2d 4, 5 (D.C.1978)(other citations omitted)). Under this analysis, " '[w]hen the policy of one state would be advanced by application of its law, and that of another state would not be advanced by application of its law, a false conflict appears and the law of the interested state prevails." ' *Id.* (quoting *Biscoe v. Arlington County,* 238 U.S.App. D.C. 206, 214, 738 F.2d 1352, 1360 (1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985)). A true conflict arises when both states have an interest in applying their own laws to the facts of the case, in which case the law of the forum "will be applied unless the foreign state has a greater interest in the controversy." *Id.* (citing *Biscoe,* 238 U.S.App. D.C. at 214, 738 F.2d at 1360) (other citations omitted). In order to facilitate the governmental interests analysis, we consider four factors, enumerated in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) § 145, Comment d.:

a) the place where the injury occurred;

b) the place where the conduct causing the injury occurred;

c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

d) the place where the relationship is centered.

*District of Columbia v. Coleman,* 667 A.2d 811, 816 (D.C.1995) (citing *Hercules & Co.,* 566 A.2d 31, 40–41 (D.C.1989)). Applying these factors leads to the conclusion that the trial court did not err in applying District of Columbia law for purposes of determining damages in this case.

First, the place of the injury and death was the District of Columbia. Second, the conduct which resulted in decedent's wrongful death occurred in the District. Third, the person responsible for the shooting which caused decedent's

3. The Maryland wrongful death statute provides that if a spouse or minor child dies, the recovery of damages is not limited to pecuniary losses, "but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection ...." *Biro v. Schombert,* 41 Md.App. 658, 398 A.2d 519, 523 (1979) (citing Md. Code Ann., Cts. & Jud. Proc. § 3–904(d)), *vacated,* 285 Md. 290, 402 A.2d 71 (1979). *Compare District of Columbia v. Howell,* 607 A.2d 501, 506 (D.C.1992)(loss of parent-child consortium is not a basis for damages in the District of Columbia).

death was employed at the time by the District's Metropolitan Police Department. Indeed, the District's responsibility is based upon the action of its employee in causing decedent's death. Fourth, the relationship to the events is centered clearly in the District. Thus, the four-factor government interests analysis overwhelmingly favors application of District law. Decedent's residence in Maryland is the only factor in this analysis weighing against an otherwise straightforward analysis favoring the application of District law. However, residency is not dispositive in this analysis. *See Tramontana v. S.A. Empresa De Viacao Aerea Rio Grandense,* 121 U.S.App. D.C. 338, 345, 350 F.2d 468, 475 (1965), *cert. denied,* 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966). The court's decision in *Tramontana* is instructive.

At issue in *Tramontana* was the applicability of District of Columbia law, the forum jurisdiction, to a monetary damage limitation in the wrongful death statute of Brazil, where the injury and death occurred. 121 U.S.App. D.C. at 338, 350 F.2d at 468. There, the decedent, a member of the United States Navy Band traveling under Navy orders, was killed when an airplane, owned and operated by a Brazilian airline, collided with a Navy plane over Rio de Janeiro, Brazil. 121 U.S.App. D.C. at 338, 350 F.2d at 469. At the time, the plane was traveling from Argentina to Brazil. The D.C. Circuit held that while the decedent was a Maryland resident who died in a Brazilian air collision, Brazil had a substantial and legitimate interest in the death and, therefore, Brazilian law should apply to the wrongful death action. *Id.* The D.C. Circuit's analysis was also supported by Maryland's wrongful death statute, which provided that courts should give effect to " 'the rights and obligations created by and existing under the laws of the foreign jurisdiction in which the wrongful act, neglect or default occurred.' " 121 U.S.App.D.C. at 344, 350 F.2d at 473–74 (quoting Md. Ann.Code, art. 67 § 2 (1957)). Enactment of this provision resulted in "expos[ing] Maryland residents to suit at home for acts committed outside the state, with the survivors of Maryland residents killed away from home dependent upon foreign law for any rights of recovery." 121 U.S.App.D.C. at 344, 350 F.2d at 474. In applying Brazilian law, the court reasoned further that

> . . . if a Maryland court would not disregard Brazilian law for the benefit of one of its own residents in a suit brought there, why should a court sitting in the District of Columbia do so at the expense of substantial and legitimate interests of Brazil?

121 U.S.App. D.C. at 345, 350 F.2d at 475.

The case before us now is factually similar to *Tramontana.* Like the facts in *Tramontana,* appellant's decedent was a Maryland resident who was killed in another jurisdiction. Similarly, the Maryland wrongful death statute in effect specifically provides that "[i]f the wrongful act occurred in another state, the District of Columbia, or a territory of the United States, a Maryland court shall apply the substantive law of *that* jurisdiction." Md. Code Ann., Cts. & Jud. Proc. § 3–903(a) (1998) (emphasis added). Although this case is not before a Maryland court, the analysis and underlying principles are the same. As the wrongful act occurred outside of Maryland, the law of the state where the wrongful act which resulted in death should apply.

Appellant's argument that the District of Columbia does not have an interest in the events surrounding the decedent's death in this case is unpersuasive. The decedent was shot and killed by a District of Columbia police officer in the District of Columbia. When a District officer commits a

tortious act within the District, the District has a strong policy interest in the matter, as well as the potential damages that the injured party can recover. Moreover, the District of Columbia's wrongful death statute specifically applies to acts "done or happening within the limits of the District ...." D.C.Code § 16-2701. Further, a review of this jurisdiction's wrongful death statute supports the trial court's conclusion that "the issue of recoverable damages is an intrinsic part of the [District's Wrongful Death] Act ...." Since appellant brought this action under the District's wrongful death statute, and as the District has a stronger policy interest, District of Columbia law should govern the recovery of damages in this case.

For the foregoing reasons, the judgment appealed from hereby is affirmed.