**Rochelle JAFFE, Individually and as Personal Representative of the Estate of Eve Jaffe, et al., Plaintiff,**

v.

**PALLOTTA TEAMWORKS, et al., Defendants.**

**No. CIV.A.02–1048 RMC.**

United States District Court, District of Columbia.

Aug. 8, 2003.

Neal Mullan Brown, Waranch & Brown, LLC, Lutherville, MD, Jan E. Simonsen, Carr Maloney P.C., Washington, DC, for University of Maryland Medical System Corporation.

James W. Taglieri, Cadeaux & Taglieri, P.C., Washington, DC, for Rochelle Jaffe.

## MEMORANDUM OPINION

COLLYER, District Judge.

This lawsuit arises from the death of Eve Jaffe on June 23, 2000, in the Commonwealth of Virginia during her participation in the "Washington D.C. AIDS-Ride® 5 Presented by Tanqueray" ("AIDSRide"). Eve Jaffe's estate and family, represented by her mother, sue Pallotta TeamWorks, which organized the AIDSRide, and the University of Maryland Medical System Corporation ("UMMS"), which—through its R. Adams Cowley Shock Trauma Center—allegedly failed to provide appropriate medical monitoring and negligently treated Eve Jaffe. Because the parties agree that the amended complaint's wrongful death allegations are barred as to UMMS by Virginia's statute of limitations and the Court finds that all of the allegations are barred as to both defendants by a waiver of liability for negligence, the amended complaint will be dismissed.

## I. BACKGROUND

The AIDSRide was organized as a fundraiser for AIDS research and education. The four-day bicycle pledge ride (covering 330 miles) began on June 22, 2000, in Raleigh, North Carolina, and ended on the Mall in Washington, D.C., on June 25, 2000. It involved more than 1,600 participants and 120 volunteers. AIDSRide 2000 marked the fifth year of the event and raised close to $5 million for local AIDS charities.

Eve Jaffe participated in portions of the AIDSRide in North Carolina and Virginia. On the afternoon of June 22, 2000, she approached a medical aid station complaining of dizziness and nausea. Volunteers manning the station administered intravenous fluids, but Eve Jaffe's condition did not improve and she began vomiting. Additional intravenous fluids were administered, after which her blood pressure dropped and she collapsed. She was transported by ambulance to the hospital where, on June 23, 2000, she died without regaining consciousness. The amended complaint alleges that Eve Jaffe suffered a full cardiopulmonary arrest resulting in her death; UMMS states that the diagnosis in the medical records is "subarachnoid hemorrhage," or internal bleeding in her brain. Am. Compl. ¶ 14; Def. UMMS Mot. to Dismiss or, in the Alt., for Summ. J. ("UMMS Mot.") at 2.

Rochelle Jaffe, individually and as personal representative of the estate of Eve Jaffe, initiated this lawsuit against Pallotta TeamWorks on May 30, 2002. She filed an amended complaint, adding UMMS as a defendant, on February 27, 2003. The amended complaint contains two counts. Count one is labeled a "survival action" and alleges that Pallotta TeamWorks and UMMS negligently organized, trained, and equipped the medical aid stations and negligently diagnosed, monitored, treated, and cared for Eve Jaffe. Count two is labeled "wrongful death" and seeks compensation for Eve Jaffe's family members for the financial loss, sorrow, and mental anguish associated with her death.

Both defendants argue that the amended complaint should be dismissed because it is untimely under the applicable statutes of limitations—although they do not agree which jurisdiction's statutes of limitations apply—and because Eve Jaffe allegedly waived her right to sue prior to participating in the AIDSRide.

Titled "WAIVER OF NEGLIGENCE & COMPLETE RELEASE OF LIABILITY[,]" with the additional notation "MEDICAL WAIVER" in the upper, right-hand corner of the document, the waiver form contained the following provisions:

> I wish to participate in Washington D.C. AIDSRide 5. . . . I am voluntarily participating in this event with knowledge of the dangers involved and I agree to accept any and all risks of injury or death.

> In consideration for being permitted to participate in the Washington, D.C. AIDSRide 5 . . ., I agree to assume all risks and to release and hold harmless . . . Pallotta TeamWorks, a California Corporation, Schieffelin & Somerset, Washington D.C. AIDSRide 5 . . . Medical Director, R. Adams Cowley Shock Trauma Center [at UMMS] or any other Ride Medical Team member . . . (and all of their respective officers, directors, agents, employees and members) who, through negligence, carelessness or any other cause, might otherwise be liable to me.

> I intend by this Waiver and Release to release, in advance, and to waive my rights and discharge all of the persons and entities mentioned above from any and all claims for damages for death, personal injury or property damage which I have or which may hereafter accrue to me, as a result of my participation in Washington D.C. AIDSRide . . . even though that liability may arise from negligence or carelessness on the part of the persons or entities being released. I understand and agree that this Waiver and Release is binding on my heirs, assigns and legal representatives.

> I am physically capable of participating in Washington D.C. AIDSRide 5 . . . and my medical care provider has approved my participation . . . .

> I have carefully read this Waiver and Release and fully understand its contents. I certify that I am at least 17 years of age at time of registration. I am aware that this is a RELEASE OF LIABILITY and a contract between me and the persons and entities mentioned above and all of their respective officers, directors, employees, agents and representatives and I sign it of my own free will.

Directly above Eve Jaffe's signature, dated June 2, 2000, in bold and all capitals, was the following statement on the form:

> THIS IS AN IMPORTANT LEGAL DOCUMENT. READ IT CAREFULLY BEFORE SIGNING BELOW.

Subject matter jurisdiction for this lawsuit is based on diversity of citizenship under 28 U.S.C. § 1332(a).

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure will be denied unless the plaintiff "can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). At this stage of the litigation, "[t]he allegations in plaintiff's complaint must be presumed true . . . and all reasonable factual inferences should be construed in [her] favor." *Lee v. Wolfson,* 265 F.Supp.2d 14 (D.D.C. 2003).

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To be "material" and "genuine," a factual dispute must be capable of affecting the substantive outcome of the case. *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

## III. ANALYSIS

The primary question presented by the defendants' motions is which jurisdiction's law applies to the claims brought against—or, more appropriately, each of the defenses raised by—the defendants: Virginia law, where Eve Jaffe received medical attention and died, or the law of the District of Columbia, the forum state and the location where she signed up to participate in the AIDSRide and also signed the waiver form. Not surprisingly, the answer to this question depends on which issue is being examined.

To appreciate the situation, one must first understand the nature of the claim advanced by the estate of Eve Jaffe and that advanced by her family. It is the family that suffers from Eve Jaffe's premature death and has a potential claim for wrongful death against the defendants. Eve Jaffe herself, through Rochelle Jaffe

as personal representative of her estate, is the claimant in the survival action. *See Nelson v. American Nat'l Red Cross,* 26 F.3d 193, 199 (D.C.Cir.1994) ("The Wrongful Death Act creates in the survivor the right to sue for damages caused by the decedent's death. The survival statute compensates the estate for injuries caused to the decedent while the wrongful death provision gives a right of action to his survivor who suffers a loss because of his death.").

### A. What Is the Applicable Statute of Limitations?

UMMS argues that the entire case against it should be dismissed because Rochelle Jaffe did not file the amended complaint—which added UMMS as a defendant—within two years of accrual, as required by Virginia's statutes of limitations for wrongful death claims and survival actions. *See* VA. CODE § 8.01–243 (personal injuries); VA. CODE § 8.01–244 (wrongful death). Rochelle Jaffe "agrees with defendant UMMS that the substantive law of Virginia should apply to her claims ... [and] that her wrongful death claim is time-barred" as to UMMS. Pl. Opp. to Def. UMMS Mot. ("Opp. to UMMS Mot.") at 1–2. However, she asserts that the District of Columbia's three-year statute of limitations should govern her survival action as a matter of procedure. *See* D.C. CODE § 12–301(8). Not to be left out, Pallotta TeamWorks urges the Court to apply the District's one-year statute of limitations to the wrongful death claim and to dismiss that cause of action. *See* D.C. CODE § 16–2702.

 This case of alleged medical malpractice is in federal court because the parties are citizens of different jurisdictions; in these situations, the Court will apply the choice of law rules of the forum, that is, the District of Columbia. *See*

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). A statute of limitations is generally considered a procedural matter as to which local law applies. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,* 62 F.3d 1454, 1458 (D.C.Cir.1995) ("[Under] D.C. choice-of-law rules, . . . statutes of limitations [are treated] as procedural, and therefore almost always mandate application of the District's own statute of limitations."). In *Huang v. D'Albora,* however, the District of Columbia Court of Appeals noted an exception to this rule: a statute of limitations is not governed by the law of the forum in instances "where limitations is part of the cause of action itself[.]" 644 A.2d 1, 4 (D.C.1994).

 The Court, as an initial matter, must decide whether to apply the substantive law of the District of Columbia or Virginia to Rochelle Jaffe's claims.[1] In tort cases, courts in the District employ a "governmental interests" analysis to determine which jurisdiction's substantive law controls. *See, e.g., Herbert v. District of Columbia,* 808 A.2d 776, 779 (D.C.2002); *District of Columbia v. Coleman,* 667 A.2d 811, 816 (D.C.1995); *Estrada v. PEPCO,* 488 A.2d 1359, 1361 n. 2 (D.C.1985).

> In order to facilitate the governmental interests analysis, [the *Herbert* court] consider[ed] four factors, enumerated in the Restatement (Second) of Conflict of Laws (1971) § 145, Comment d.: a) the place where the injury occurred; b) the place where the conduct causing the injury occurred; c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and d) the place where the relationship is centered.

*Herbert,* 808 A.2d at 779. Using these factors, the Court finds that Virginia has a

stronger interest in, and a more significant relationship to, the wrongful death claim and the survivor action than the District of Columbia. The fundamental allegations in the amended complaint concern the medical care administered to Eve Jaffe on June 22, 2000. At that time, she was in the Commonwealth of Virginia and all events surrounding her treatment and death occurred there. Accordingly, the Court will apply Virginia substantive tort law to these claims.

 In addition, the Court will apply Virginia's two-year statute of limitations to the wrongful death claim because the limitations period in Virginia's wrongful death act is substantive under *Huang. See Overstreet v. Kentucky Cent. Life Ins. Co.,* 950 F.2d 931 (4th Cir.1991) ("recognizing the statute of limitations contained in the Virginia wrongful death act as substantive") (quoting *Spring v. United States,* 833 F.Supp. 575, 578 (E.D.Va.1993)); *see also Lewis v. Reconstruction Fin. Corp.,* 177 F.2d 654 (D.C.Cir.1949).

Eve Jaffe died on June 23, 2003, and the family sued UMMS for wrongful death on February 27, 2003. Both Rochelle Jaffe and UMMS agree that this claim against UMMS was brought more than two years after Eve Jaffe's death—out of time under Virginia's statute of limitations—and must be dismissed as to UMMS. Since Pallotta TeamWorks was sued within two years of Eve Jaffe's death, it has no statute of limitations defense against the wrongful death allegations.

 The District of Columbia's choice of law analysis renders a different result on the statute of limitations issue for the survival action. As stated above, Virginia has a two-year statute of limitations for per-

---

1. Unlike the plaintiffs in *Huang,* Rochelle Jaffe's amended complaint does not specify under which jurisdiction's law she seeks recovery.

sonal injury claims, while the District's time limit for filing negligence claims under its survivor act is three years. On behalf of the estate of Eve Jaffe, Rochelle Jaffe argues that the normal approach of the District of Columbia should be followed, that the issue of the statute of limitations should be deemed procedural and governed by local standards, and that the Court should apply a three-year statute of limitations. UMMS contends that the injury to Eve Jaffe was allegedly caused by medical malpractice in the Commonwealth of Virginia, where she was treated and died, and that Virginia's two-year statute of limitations should be applied to this claim.

Neither defendant has pointed to any legislation or case law holding that the statute of limitations is "part" of a survival action—*i.e.,* substantive—brought under Virginia law. As such, the Court will apply the three-year statute of limitations of the forum to this cause of action. Because the amended complaint was filed within three years of Eve Jaffe's death, the District of Columbia's statute of limitations for survival actions is no bar as to either defendant.

## B. What Is the Impact of the Waiver?

Rochelle Jaffe asks the Court to disregard the waiver form signed by Eve Jaffe before the AIDSRide. She asserts that Virginia law controls this issue and that, "[u]nder Virginia law, pre-injury releases, such as the one signed by Eve Jaffe, are void as being against public policy." Opp. to UMMS Mot. at 3 (citing *Hiett v. Lake Barcroft Cmty. Ass'n,* 244 Va. 191, 418 S.E.2d 894 (1992)). In addition, Rochelle Jaffe submits that Pallotta TeamWorks, "which has adopted the arguments presented by UMMS, essentially stands in its shoes with respect to the attempt to absolve itself, before any treatment, of an[y] acts of medical malpractice" and should

not be allowed to avail itself of the waiver form. Pl. Opp. to Pallotta TeamWorks Am. Mot. for Summ. J. ("Opp. to Pallotta TeamWorks Mot.") at 2.

 The Court will apply the District of Columbia's law—not the law of Virginia—to this issue because the District has a more significant interest in the effect and interpretation of the waiver form. *See Logan v. Providence Hosp., Inc.,* 778 A.2d 275, 280 (D.C.2001) ("[D]ifferent law may apply to different issues in a lawsuit."). Eve Jaffe was a resident of the District and she signed the waiver form here. Although the AIDSRide started elsewhere, it ended in the District. Furthermore, Eve Jaffe and the other participants donated their efforts through this bicycle pledge ride to raise money for local charities. This is a contract issue with nearly all connections to the District; it is a matter of concern to the citizens here. If there is a public policy objection to such a waiver, it must be found in local decisions and sensibilities.

 In general, "[e]xculpatory contract provisions are valid and enforceable in the District of Columbia." *Ferenc v. World Child, Inc.,* 977 F.Supp. 56, 61 (D.D.C.1997). "[A]ny alteration of the 'familiar rules visiting liability upon a tortfeasor for the consequences of his negligence' must be clearly and unambiguously expressed. No particular form or words are needed but the intent to waive negligence must be clear." *Maiatico v. Hot Shoppes, Inc.,* 287 F.2d 349, 351–52 (D.C.Cir.1961) (examining whether a lease provision "waive[d] ... the landlord's claim for the tenant's negligence"). In other contexts, courts in the District have distinguished between waivers of liability for negligence, which are enforceable as long as the clear intention of the parties appears on the face of the contract, and waivers of strict liability, which are not enforceable. *See Poto-*

*mac Plaza Terraces, Inc. v. QSC Products, Inc.*, 868 F.Supp. 346, 354–55 (D.D.C.1994) ("Unlike negligence disclaimers, disclaimers of strict liability are not enforceable.").

The parties agree that District of Columbia courts have not specifically addressed the validity of waivers for medical negligence when the waivers were signed prior to receiving treatment. *See* Def. Reply to Opp. to Pallotta TeamWorks Mot. at 3–4; Opp. to UMMS Mot. at 3. Rochelle Jaffe argues that the District would follow the developing law in other jurisdictions refusing to enforce such waivers. Decisions from California, Tennessee, and Michigan are illustrative of this trend. In *Tunkl v. Regents of Univ. of Cal.*, 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963), the Supreme Court of California invalidated a release from negligence claims that was required of all patients checking into a charitable research hospital. Setting up a six-factor test—examining, in particular, the nature of the service provided and the superiority of bargaining power by the service provider—the California Supreme Court was unwilling to enforce the hospital's waiver. Tennessee followed suit in a case involving a patient who obtained medical services for an abortion and later discovered that she remained pregnant. *See Olson v. Molzen*, 558 S.W.2d 429 (Tenn.1977). Prior to treatment, the patient had executed a release discharging the doctor from responsibility for any negligence associated with the procedure. Although Tennessee courts generally recognize that "parties may contract that one shall not be liable for his negligence to another[,]" that state's Supreme Court in *Olson* made an exception for "a case involving a professional person operating in an area of public interest and pursuing a profession subject to licensure by the state." *Id.* at 430. Michigan adopted the same analysis. *See Cudnik v. William Beaumont Hosp.*, 207 Mich.App. 378, 525 N.W.2d 891 (1995). Michigan courts normally will enforce "exculpatory agreements or releases that absolve a party from liability for damages caused by the party's negligence." *Id.* at 894. But, Michigan will not allow "a hospital [to] absolve itself from liability for the negligence of its employees via an exculpatory agreement signed by a patient[.]" *Id.* At issue in *Cudnik* was a waiver signed by an 81–year–old man with prostate cancer immediately before receiving radiation treatment at a hospital. Citing *Tunkl*, the Michigan Court of Appeals refused to enforce that waiver.

■ The circumstances facing the Court here are decidedly different from these cases. Eve Jaffe was a young, apparently healthy, and vigorous adult when she signed the waiver form. She was participating in a recreational charitable event to raise money for those who suffer from HIV/AIDS. Unlike the plaintiffs in the cases discussed above, Eve Jaffe did not sign the waiver form in exchange for receiving medical care for an (existing) injury or illness; she executed the waiver to join the AIDSRide, a completely voluntary activity. Moreover, she had participated in the 1999 AIDSRide, so she can be presumed to know the nature of the event and the medical arrangements that would generally be provided.

The waiver form was very clear on its face. It contained a complete release of liability for all negligence claims, including claims for medical negligence.[2] Immediately above her signature, Eve Jaffe was advised that the document had legal conse-

---

2. This latter point was made twice: once by naming the R. Adams Cowley Shock Trauma Center (or any other AIDSRide Medical Team member) in the text and once by putting "MEDICAL WAIVER" in the upper, right-hand corner of the document.

quences and should be read carefully. There is no argument that Eve Jaffe's signature was anything but voluntary and knowing. In fact, Rochelle Jaffe acknowledged at her deposition that she assumed Eve Jaffe understood the waiver form when she signed it. *See* UMMS Mot. Ex. 2 (Dep. of Rochelle Jaffe).

The District of Columbia might recognize the exception for pre-injury medical liability waivers that California, Tennessee, and Michigan have adopted when the circumstances show less voluntariness and more superiority of bargaining power. Since those factors are not present here, the Court concludes that the District of Columbia would apply its normal rule enforcing waivers that are clear and unambiguous. The waiver form signed by Eve Jaffe meets these criteria and, therefore, bars the allegations of the amended complaint.[3]

## IV. CONCLUSION

For these reasons, the defendants' motions for summary judgment will be granted and the case will be dismissed. A separate order accompanies this memorandum opinion.

## *ORDER*

For the reasons stated in the memorandum opinion that accompanies this order, it is hereby

**ORDERED** that the defendants' motions for summary judgment are **GRANTED**. It is

**FURTHER ORDERED** that the plaintiff's consent motion for a status conference is **DENIED** as moot. It is

**FURTHER ORDERED** that the amended complaint is **DISMISSED**.

**SO ORDERED.**

---

3. Even if the District of Columbia would not accept this waiver as between Eve Jaffe and UMMS, the Court has not heard any legitimate public policy concerns that would warrant invalidating a liability waiver as between her and Pallotta TeamWorks. Pallotta TeamWorks is not a business that is subject to the public regulation or licensure of a hospital, its services are not of great importance to the public when measured against medical services, and it has no superiority of bargaining power over would-be participants in the AIDSRide.